UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CARL E. ADAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-42 RM |
| | ) | |
| KOONTZ-WAGNER ELECTRIC, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Koontz-Wagner Electric terminated 61-year-old Carl Adams's employment on February 13, 2004, a termination Mr. Adams contends was based on his age. This case is now before the court on Koontz-Wagner's motion for summary judgment on Mr. Adams's claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Koontz-Wagner also asks the court to strike Mr. Adams's affidavit filed by Mr. Adams in support of his summary judgment response. For the reasons that follow, the court grants Koontz-Wagner's summary judgment motion.

FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Mr. Adams as is reasonable. Mr. Adams worked for a number of years for various companies in the South Bend area, and then became the owner-operator of Edgewood Electrical Supply Equipment. At that same time,

Mr. Adams also worked as a private contractor performing electrical work under the business name Adams Electric.

Mr. Adams dissolved his businesses sometime in 2001, and in December of that year, he joined the International Brotherhood of Electrical Workers, Local 153. Unlike most of the other Local 153 members, Mr. Adams didn't complete the five-year apprenticeship program. Instead, he "organized" into the union: he provided references, met with a committee, took a test, and was then considered a journeyman electrician. Mr. Adams claims that he encountered hostility from the other members of Local 153 from the time of his initial entry into the union.

On January 14, 2004, Mr. Adams received his first job referral through Local 153 and was sent to work for Koontz-Wagner based on the company's request for additional journeymen electricians to work at its Elkhart General Hospital job site. Upon his arrival at EGH, Mr. Adams met with Kenneth Young, Koontz-Wagner's general foreman at the site. Mr. Adams was assigned to work with foreman David Peck's crew and later was reassigned to work with foreman Michael Lipps's crew. According to Mr. Adams, the hostility he had earlier encountered from other union workers continued, and was tolerated by Koontz-Wagner officials, while he worked at the EGH site.

During Mr. Adams's first few weeks of work at EGH, Mr. Peck and Mr. Lipps each told Mr. Young they felt Mr. Adams's skills weren't at the level expected of a journeyman electrician. They reported that Mr. Adams needed considerably more supervision and direction than they expected of a journeyman electrician. Mr.

2

Adams disputes those reports; he maintains he performed his tasks in a workmanlike manner and says he wasn't advised of any deficiencies in his performance.

On February 13, 2004, Mr. Young met with Mr. Peck, Mr. Lipps, and Thomas Cioch, Koontz-Wagner's project manager at EGH, to discuss the project. Koontz-Wagner says the men reviewed the work and employees required to complete the work at EGH and decided to reduce by one the number of journeymen electricians on the job. At that time, Mr. Young recommended to Mr. Cioch that Mr. Adams be discharged based on the reports of Mr. Peck and Mr. Lipps that Mr. Adams wasn't meeting the company's performance expectations. Mr. Cioch approved the recommendation, and Mr. Adams's position as a journeyman electrician was eliminated and he was terminated that same day.

Less than six months later, Mr. Adams filed a charge of age discrimination with the EEOC and after receiving his right to sue letter filed suit in this court claiming he suffered discrimination based on his age. He seeks five months' back pay, compensatory and punitive damages, and reimbursement for the liquidation of his tools and equipment.

MOTION TO STRIKE

Koontz-Wagner has moved to strike portions of Carl Adams's affidavit submitted in support of his summary judgment response. Koontz-Wagner challenges various statements made by Mr. Adams in paragraphs 3, 4, 6, and 7 of his affidavit, arguing that those statements are inadmissible hearsay, not based on personal knowledge, conclusory allegations not supported by the record, and mere speculation and conjecture. Mr. Adams didn't respond to the motion. The court agrees that portions of Mr. Adams's affidavit could be stricken based Koontz-Wagner's arguments, but because consideration of the challenged statements would not affect the outcome of the summary judgment motion, the company's motion to strike will be denied as moot.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the

nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## DISCUSSION

Mr. Adams claims Koontz-Wagner discriminated against him based on his age. The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "broadly prohibits arbitrary discrimination in the workplace based on age." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120 (1985) (*quoting* Lorillard v. Pons, 434 U.S. 575, 577 (1978)). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 42 U.S.C. § 623(a)(1). Mr. Adams may prevail on his ADEA claim if he shows that his discharge "would not have

5

occurred 'but for' [Koontz-Wagner's] age-based discriminatory motive." Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).

Mr. Adams may prove discrimination under the direct method by presenting either direct or circumstantial evidence of a discriminatory motive on the part of Koontz-Wagner, or under the indirect burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Rudin v. Lincoln Land Comm'y Coll., 420 F.3d 712, 719 (7th Cir. 2005). "In any case, the bottom line is the same: [Mr. Adams] must show a discriminatory motive either with some evidence that is incriminating in itself or by ruling out other plausible motives for the adverse employment action." Maldonado v. U.S. Bank, 186 F.3d 759, 763 (7th Cir. 1999).

Mr. Adams hasn't set forth any direct evidence of discrimination. To prevail under the indirect method, Mr. Adams must establish that "he is a member of the statutorily protected class (in this case, workers 40 years old or older), that he [was] performing his job satisfactorily, and that (if it is a case of discharge or layoff allegedly motivated by age discrimination) he was replaced by a much younger worker." Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 386 (7th Cir. 2000). In the case of a mini reduction-in-force such as this—a single employee, Mr. Adams, was discharged and not replaced and the remaining employees absorbed his responsibilities—the last element of the prima facie case is modified to require Mr. Adams to demonstrate that his duties were absorbed by employees who were not members of the protected class. Krchnavy v. Limagrain Genetics Corp., 294

6

F.3d 871, 875-876 (7th Cir. 2002); *see also* Thorn v. Sundstrand Aerospace Corp., 207 F.3d at 386 (holding the McDonnell Douglas test appropriate in RIF cases).

If Mr. Adams meets his burden of establishing a prima facie case, a presumption of discrimination arises, and the burden shifts to Koontz-Wagner to set forth a legitimate non-discriminatory reason for the adverse employment action. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 694 (7th Cir. 2000). If Koontz-Wagner articulates such a reason, Mr. Adams must prove by a preponderance of the evidence that Koontz-Wagner's proffered reason was not its true reason, but was a pretext for discrimination. Michas v. Health Cost Controls, 209 F.3d at 694. "To show pretext in a RIF case, [Mr. Adams] must establish that an improper motive 'tipped the balance' in favor of discharge. It is insufficient for [Mr. Adams] to show that [Koontz-Wagner] acted incorrectly or undesirably by firing him; instead, [Mr. Adams] must show that [Koontz-Wagner] did not honestly believe in the reasons it gave for firing him." Krchnavy v. Limagrain Genetics Corp., 294 F.3d at 876 (internal quotations and citations omitted). Throughout this burden-shifting, the ultimate burden of persuasion remains at all times with Mr. Adams. Moser v. Indiana Dep't of Correc., 406 F.3d 895, 901 (7th Cir. 2005).

Koontz-Wagner argues that Mr. Adams can't make out a prima facie case of discrimination because he can't carry his burden of establishing the second prong—that he was performing his job satisfactorily—or the fourth prong—that employees not in the protected class absorbed his job responsibilities—of the McDonnell Douglas test. Koontz-Wagner says, in the alternative, that even if Mr.

7

Adams could establish a prima facie case, the company has a legitimate, non-discriminatory reason for its action in terminating his employment: that his job performance as a journeyman electrician wasn't meeting the company's expectations. Mr. Adams maintains he can establish a prima facie case and demonstrate that Koontz-Wagner's reason for his discharge was a pretext for discrimination.

*Job Performance*

Both sides agree Mr. Adams can establish the first and third elements of a prima facie case: he is over the age of 40 and, thus, a member of a protected class, and the termination of his employment was an adverse employment action. Koontz-Wagner argues Mr. Adams can't establish the second element of a prima facie case because he wasn't performing his job satisfactorily. Koontz-Wagner relies on the affidavit of Kenneth Young, the company's general foreman at the EGH site, who states as follows:

> Between January 19, 2004, and February 13, 2004, Mr. Adams was assigned to each of the foremen at the EGH jobsite. Each foreman reported to me that they found it difficult to assign Mr. Adams to independent tasks based on his abilities. Each foreman also reported to me that Mr. Adams' skills were not at the level expected of a journeyman electrician and each reported to me that Mr. Adams required considerable more supervision than they expected of a journeyman electrician. Finally, it was reported to me that Mr. Adams required too much direction to perform the work that Koontz-Wagner expected to a journeyman electrician and that he was frequently away from his work area.

8

Young Aff., ¶ 5. Koontz-Wagner also submits the affidavits of David Peck and Michael Lipps, the foremen who supervised Mr. Adams at EGH. In those affidavits, Mr. Peck and Mr. Lipps confirm they believed Mr. Adams's skills were not at a level of a journeyman electrician.

Mr. Adams hasn't addressed Koontz-Wagner's argument relating to his job performance in the context of establishing a prima facie case of discrimination, but he asserts in his affidavit that he performed his tasks in a workmanlike manner. Even though at this stage in the proceedings the court must draw all reasonable inferences in Mr. Adams's favor as the non-moving party, his conclusory statements about his own job performance don't create an issue of fact. Jackson v. E.J. Brach Corp., 176 F.3d 971, 984-985 (7th Cir. 1999); *see also* Rudin v. Lincoln Land Comm'y Coll., 420 F.3d at 727 n.10 (noting that "[a]n employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability" (*quoting* Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992)). Mr. Adams "must do more than challenge the judgment of his superiors through his own self-interested assertions" because his "perception of himself . . . is not relevant. It is the perception of the decision maker which is relevant." Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 337-338 (7th Cir. 1991).

Mr. Adams's summary conclusion that he "has established a prima facie case of employment discrimination on the basis of age inasmuch as (A) he belongs to a protected group, (B) he was subjected to an adverse employment action, and

9

(C) similarly situated employees who were outside his classification (i.e., younger co-workers) received more favorable treatment" is insufficient to raise a genuine issue of material fact relating to his job performance. Mr. Adams hasn't carried his burden with respect to the second prong of the prima facie showing by presenting evidence to establish he was meeting Koontz-Wagner's legitimate job expectations. Mr. Adams hasn't established a prima facie case, so the court needn't address Koontz-Wagner's further argument that Mr. Adams can't show that his job responsibilities were absorbed by employees not in the protected class.

*Pretext*

Koontz-Wagner argues, in the alternative, that even if Mr. Adams could establish a prima facie case of discrimination, the company had a legitimate, non-discriminatory reason for its decision to discharge him. According to Koontz-Wagner, company officials at the EGH job site determined the number of journeymen electricians needed to be reduced by one, and based on complaints by two foremen that Mr. Adams's skills weren't at a level expected of a journeyman electrician, they made the decision to discharge Mr. Adams. Koontz-Wagner insists the discharge decision wasn't based on Mr. Adams's age.

A plaintiff doesn't reach the pretext stage of a McDonnell Douglas analysis unless he first establishes a prima facie case of discrimination and, as discussed above, Mr. Adams hasn't established a prima facie case, but because the issue of Mr. Adams's job performance overlaps in the prima facie case and Mr. Adams's

10

claim of pretext, the court will examine whether Mr. Adams has produced evidence sufficient to show pretext. To demonstrate pretext, Mr. Adams must present evidence to show that Koontz-Wagner "did not honestly believe that a RIF was the reason [he] was fired and that age tipped the balance in favor of [his] discharge. . . . Even if the reduction was otherwise bona fide, [Mr. Adams] may show pretext by demonstrating that the specific reasons given for including [him] in the reduction were pretextual." Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012-1013 (7th Cir. 2000).

Mr. Adams first contends Koontz-Wagner's reason for his discharge – a reduction in force – was a fabrication. Mr. Adams, however, has provided no support for his statement. In fact, the evidence relied on by Mr. Adams supports Koontz-Wagner's position that a reduction was justified. Mr. Adams testified at his deposition that there wasn't enough work at the EGH job site to keep him busy, and he acknowledged in his response brief that "[t]his singular 'Reduction in Work Force' stated reason for terminating [Mr.] Adams is fully corroborated by the Affidavit of Frank A. Ermeti."[1] Mr. Adams hasn't presented any evidence that Koontz-Wagner officials didn't honestly believe, based on their assessment of the EGH project, that a reduction in the number of journeymen electricians was necessary.

---

[1] Mr. Ermeti is Koontz-Wagner's Vice President for Human Resources and Material Services. Mr. Adams hasn't argued or alleged that Mr. Ermeti was involved in the decision to discharge Mr. Adams.

11

Mr. Adams claims the real reason for his termination was the discriminatory motive of Kenneth Young, who participated in the discharge decision. Mr. Adams claims Mr. Young labeled him an "old-timer" and viewed him "distinctively due to his older age." Mr. Adams explains:

> [W]hen I was one of the earliest workers to arrive at the EGH jobsite on a particularly cold morning, Mr. Young made the statement that 'Cold weather can't keep us old timers away.' That statement was made by the supervisor who would fire me just a few days later . . . . Mr. Young's comment revived the very hostility which I was experiencing by my younger co-workers."

Adams Aff., ¶ 7. Mr. Adams summarily concludes that Mr. Young's "old timer" comment "revealed an unlawful discriminatory motivation (i.e., age-based discrimination), again perpetuating the aforementioned pre-existing hostility held by younger union co-workers at the EGH jobsite against their elder counterpart."

Mr. Adams has provided no support for his claim that the "pre-existing hostility" of his co-workers, perpetuated by Mr. Young, was based on his age. Mr. Adams references his deposition testimony as evidence of their age-based hostility, but that testimony doesn't support his claim:

> Q    Was there a meeting that you had to attend to be introduced to the union?
> A    Yes.
> Q    Okay. When did that meeting take place?
> A    I can't remember the date. But on that evening, I got sworn in with one other person and there was a very unhappy crowd.
> Q    When you say there was a – you were sworn in – were you sworn in in front of the other union members?
> A    Yes.
> Q    When you say there was an unhappy crowd, what do you mean?
> A    They were not friendly. They were rude. There were members that stood up and shouted that they didn't need new members, that their

> unemployment was already at 15 percent. They didn't need new people coming in taking their jobs.
> Q   So these were, for lack of a better word, your fellow – your now fellow union brothers?
> A   Yes.
> Q   And they seemed to be unhappy with management's decision to bring in new members; is that correct?
> A   Yes.

Adams Dep., at 51. Mr. Adams cites to other portions of his deposition testimony as well, but those pages aren't included in the record.

Mr. Young's lone statement that cold weather can't keep "us old timers" away doesn't, by itself, demonstrate pretext. Indurante v. Local 705, International Brotherhood of Teamsters, AFL-CIO, 160 F.3d 364, 367 (7th Cir. 1998). Mr. Adams hasn't argued or alleged that Mr. Young's comment related to Mr. Adams's job performance or that the comment was made in connection with the discharge decision. Before stray remarks will qualify as evidence of discrimination, the remarks must be shown to be "related to the employment decision in question. If such proof is lacking, the remarks alone will not give rise to an inference of discrimination even when uttered by the ultimate decisionmaker." Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1403 (7th Cir. 1996); *see also* Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 576 (7th Cir. 2003) ("[T]he remarks cited by Schuster are too tenuously connected to the termination decision to raise a genuine issue of material fact as to the motivation behind the decision.").

13

Mr. Adams hasn't presented evidence sufficient to raise a genuine issue about the existence of a discriminatory motive on the part of Mr. Young. Mr. Adams hasn't alleged or argued that Mr. Young disbelieved the reports of Mr. Peck and Mr. Lipps or had any reason to disbelieve their reports. While Mr. Adams claims the information relating to his job skills was based on "lies, untruths, unfriendliness" and was submitted to Mr. Young by "some unfriendly people," Mr. Adams hasn't alleged, argued, or presented any evidence to show that Mr. Young didn't believe the foremen's reports. "[T]he pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." Rudin v. Lincoln Land Comm'y Coll., 420 F.3d at 727. Mr. Adams's evidence is insufficient to raise a genuine issue of material fact about the existence of discriminatory intent on the part of Mr. Young.

Koontz-Wagner has presented evidence that once the EGH officials determined a reduction in force of one journeyman electrician was appropriate, they decided to discharge Mr. Adams based on the reports of his poor work performance. See Young Aff., ¶¶ 5-7; Young (Second) Aff., ¶ 7; Ermeti (Second) Aff., ¶¶ 5-7; Peck Aff., ¶¶ 6, 8, 9, 11 ; Lipps Aff., ¶ 4. Mr. Adams hasn't challenged the reduction in force decision and his disagreement with the company's assessment of his abilities doesn't establish pretext. He must "produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for his dismissal." Rudin v. Lincoln Land Comm'y Coll., 420 F.3d at 726 (internal quotation omitted). He hasn't done so. Viewing the record in

14

the light most favorable to Mr. Adams and drawing all inferences in his favor, the court concludes Mr. Adams hasn't produced evidence sufficient to create a genuine issue of material fact as to whether Koontz-Wagner's reason for his discharge was pretextual or to demonstrate that the reason set forth by Koontz-Wagner was not the true basis for his discharge.

### CONCLUSION

Mr. Adams hasn't carried his burden of establishing a prima facie case of age discrimination nor has he demonstrated that Koontz-Wagner's legitimate, non-discriminatory reason for his discharge was a pretext for discrimination. The motion of Koontz-Wagner Electric to strike Mr. Adams's affidavit [docket # 31] is DENIED as moot, and the company's motion for summary judgment [docket # 23] is GRANTED.

SO ORDERED.

ENTERED:   September 18, 2006

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court